Thank you very much. Thank you. Thank you. Thank you.  The next case is Red Line Detection versus Starr EnviroTech, 2015, 1047 and 1048. We'll hear from Mr. DuBolt. Yes, sir. DuBolt. DuBolt, yes. Please proceed. And again, for the timing, I understand that each side is going to be given 20 minutes? Yes. Okay. And I think I allocated that. Right. 13 to 7. You're allocating 13 to 7. Okay. Yeah. May I please report? Great. As this court is held, as the Supreme Court is held, trial is first and foremost a search for the truth. In this case, we never got to the truth because the Patent, Trial, and Appeal Board made a plainly erroneous and highly prejudicial decision to expunge all of Red Line Detection's expert testimony, expert testimony that was properly submitted by Red Line under 37 CFR 42A. What prevented you from submitting the expert declaration earlier rather than relying on 42, 123A? The rules don't require you to... No, no. I didn't say require. I said, what prevented you from submitting that expert declaration? You said in here, it's just a question of cost allocation. Well, because at the time we filed the petition, which is three months after the IPR procedure came into place, the rules clearly said that you had the ability to submit supplemental information, and you had the ability to do that one month after trial had been instituted so long it was relevant for a claim for which the IPR had been instituted. It seemed like a viable option. It was considered a viable option, and... What prevented you? You understand my question, don't you? Yeah, I do understand your question, Your Honor, and the rationale was that one of the cost savings was primarily driving the fact that it was a new procedure, and we believe we could get the information... You could have done it. Yes, we could have done it. Okay. And we could have done it, Your Honor, and the 123A expressly states that earlier availability is not a reason for denying the entry of supplemental information. 123A has two requirements, that the request may be made within one month after the trial was instituted, and that the evidence be relevant to a claim for which the trial was initiated. The regulation states the requirements for filing the motion, though. It doesn't state the requirements for granting a motion. But, Your Honor, the... The Board still has the discretion, doesn't it? It has discretion under B and C, B and... So, your view is, under A, as long as you meet the filing deadline and it's relevant, the Board has to take whatever... It limits their discretion because, as the court said in Hernandez, that the courts are bound to follow their own rules, and the rule may not... Where in the rule does it say, once these two conditions are met, the motion must be granted? Well, in our particular case, Your Honor, the earlier availability was a reason for not allowing the evidence in. That was a reason. That was a reason that is in 123B and 123C and not in 123A. It was intentionally omitted, and the USPTO, in its comments, basically said that if you don't present evidence at the time... So, your view is, if you meet the time deadline and it's relevant, you can dump as much material on the PTO as you want, and they have to accept it. The timeliness won't be a factor. There's other reasons for denying it. If it raises new grounds, which our information did not do, the interest of... So, you can restructure the whole procedure as you wish? No, Your Honor, because Comment 91, the Office of the Director's own comments, say that your penalty for not introducing evidence at the filing of the petition, your penalty is the IPR not being instituted, not the exclusion of testimony. The entire purpose of the rule is to allow evidence to come in after the IPR has been initiated. The rule relates to supplemental information. Yes. This was more than information, wasn't it? Your Honor... This is argument related to grounds? The rules say that supplemental information is defined as evidence that a party intends to rely on to support its case. That's what supple... And our expert testimony is information... Exactly what did it supplement? It basically was expert testimony that went directly to the two grounds...  What prior information did it supplement? It basically was expert testimony by one of the world's foremost authorities on EVAP testing that the grounds upon which the IPR was instituted, the combination of the given... And what prior evidence did it supplement? It was basically expert testimony... It was de novo evidence, was it not? Excuse me? It was new, it wasn't supplemental. Supplemental evidence is defined as evidence that a party submits in support of its case. So everything that you submit is supplemental? Well, according to the rationale, if you have to submit everything at the time of the filing of the petition, that's not what the rules state. The rules state there's an exact... You can supplement it. So what are you supplementing? I'm supplementing our initial arguments and the... What evidence are you supplementing? I am submitting the rationale or the expert testimony of an expert that substantiates Redline's grounds by claiming... Listen to the question. What evidence are you supplementing? Not arguments. What evidence are you supplementing? I'm supplementing our initial filing, our petition. That's evidence? Expert testimony is evidence, Your Honor. What expert testimony are you supplementing? I'm sorry. The expert testimony is the supplementation. Our petition set forth... What evidence... Listen again. Okay. What evidence are you supplementing? The prior art patents that were submitted along with our petition and the motivation to combine. And when the trial... What evidence on the motivation to combine did you submit in connection with the initial filing? We submitted the prior art references... Well, the prior art references can't be in themselves motivation to combine, can they? When the board granted our petition, they did say there was motivation to combine these references. The board actually said in granting two of the 12 grounds... Let me ask you this another way. This is a regulation of the board. You think it's plain, I guess. I mean, under your interpretation, anything that comes in within a month and is relevant has to come in. That's what the rules... When they publish the rules and the USPTO directors come... No, can you just... If it's relevant and it's timely... So your view is that this not only sets time limits on you, it sets the conditions for granting that, even though it doesn't say that's the conditions for granting the motion. Well, it sets forth the criteria, Your Honor. But it doesn't say the board has to grant. That seems to be a hole left for the board to interpret. Okay. And if that's the case, then don't you lose because then we're under a very deferential standard where we defer to the board's interpretation of its own rules. No, Your Honor, because the problem that you have here, why this case is so important, you have different panels of the board applying different criteria as to whether or not to allow us information under 123A. We cited the cases in our brief... Well, you cited cases that involved supplemental information. Yes, Your Honor. It was a supplement to prior evidence. But the problem, Your Honor, is that those panels of the board, we were not allowed... Our reference didn't come in because the board said you had to... You cited Pacific Market International. Yes, exactly. In Pacific Market, there was a 68-page declaration with claim charts. Right? Isn't that true, initially? Yes. Okay. The supplemental evidence was a 10-page declaration that refined the existing expert opinion. Right? Yes, Your Honor. Okay. That's supplementing existing evidence, is it not? It's supplementing, but, Your Honor, the definition of supplemental information, as used by the board, it's evidence that you bring in after the initiation. It's not defined as supplementing, Your Honor. It's defined as new evidence that is brought in to the case to support your case. So all your evidence is supplemental? With respect to our expert testimony, if we were... Let me rephrase that. All evidence is supplemental under your analysis? Evidence that is submitted after the initiation of an IPR. Why on earth would I submit anything beforehand? It gives me a tremendous opportunity to stand back. Because then your penalty is, Your Honor, is that your IPR doesn't get initiated. You don't get the peak that your Office of the Director said. Your penalty of withholding information is that the IPR is not instituted. It's not you are foreclosed from introducing evidence later on. The comments expressly state that. They took that into consideration in the published rulemaking and public comments. They took that into consideration and they said, if you want to withhold intentionally withhold information, you can do that. Your consequence is going to be your IPR is not initiated. Mr. Newell-Bolson, this patent was granted originally. The main reference, Gilliam, was cited. And we have this re-examination system to give the Patent Office a second crack at it. And there was a request for re-examination. It was granted. A new offer was cited. And the claims were narrowed. And the patent was confirmed. And then there was a second re-examination. A third. A third examination. So this patent now has been essentially granted three times by the Patent Office. And you're asking us to send it back for a fourth? Isn't there an end to re-examination in the Patent Office? Your Honor, excellent question. The problem is when this case was filed prior to November 1999, the only viable option that we had was ex parte re-examination. We couldn't do inter-parties re-examination. We had to basically go through the ex parte process. We think some egregious misstatements were made in the second re-examination. But there was nothing we could have done procedurally. Could we have been involved in an inter-parties process where we were involved to be able to dispute and have our input as part of the proceedings? Because by law, we were prevented from pursuing any kind of inter-parties process. That was the only alternative that we had. So we had to pursue that. And when the IPR, we had been sued. And then we went to pursue the IPR, like all the other practitioners, thinking that this was a new procedure. Do you want to spend any time on the merits? Excuse me? Do you want to spend any time? Yes, okay. Because this case is also about the obviousness analysis made by the Board. And we believe that the Board committed legal error in not conducting an appropriate obviousness analysis under KSR and this Court's precedent under Randall Manufacturing. In no time did the Board, in its final decision, ever discuss the common sense or creativity of a person skilled in the art. Creativity and common sense are not mentioned anywhere in the Board's final written decision. And as this Court has held, the test for obviousness not only permits but requires consideration of common sense and common knowledge. And that failure alone is a failure of reversible error under KSR. And not only did the Board fail to consider common sense or creativity, the Board failed to consider the prior art in the context of the background knowledge that the person of ordinary skill would have had with respect to the use of inert gases and vaporized oil to make smoke for a wide variety of applications, including leak detection. The Gilliam reference that we submitted with our petition taught all of the underlying structure to perform the claimed invention. Smoke-producing chamber, vaporizing oil in the smoke, using that smoke to detect leaks in automotive systems. The Vacutech reference, which refers to the use of the Gilliam machine, looking at the totality of the art, shows the actual use of the Gilliam machine for use in EVAP testing with a fuel tank. Both the Vacutech and Gilliam references talk about the risk of flammability and explosion. And any one of any level of skill... So it seems to me that you have a pretty good obviousness argument. But the problem for me is the Board ruled against you. And that's a factual finding, at least on the motivation that combined, that we review on a very deferential standard. Why isn't STARS expert testimony substantial evidence to support the Board's conclusion? Because this appeal is based on legal error, Your Honor. The legal error is based on not rendering a proper obviousness analysis under KSR and Randall Manufacturing. Because KSR requires that creativity and common sense be taken into consideration. That's not reflected in... Well, how do we know that? I mean, the Board doesn't have to do kind of a rote check-off of I consider this, I consider this, I consider this. I consider common creativity. We assume they've applied KSR unless their opinion is clearly to the opposite. And I don't see that. And so if we assume that there's no legal error and we're up to a substantial evidence question, then isn't STARS expert testimony enough? Well, the fact that you're having that, if you're going to have this case decided on unrebutted testimony when there was actual evidence rebutting that testimony that was not allowed to come to the record, I mean... Sure, it makes it one-sided, but that's your procedural problem. But then you're having the case decided on procedure as opposed to the merit. That goes against everything a trial is about. It's about the truth and getting evidence. Really? So the rules of evidence don't matter? The rules of civil procedure don't matter in a trial? They absolutely matter. In fact, the statute, the rule that we're talking about... But you're saying that that goes against everything about how a case can be decided. Rules matter, do they not? The rules of evidence 401, relevance, that's the cornerstone of what this information that we're trying to get in, our expert testimony, that the fact that it was brought in under rules that expressly allow that information to be brought in after a trial is initiated. That's your problem. You think that maybe we don't. Because you're using a procedural ground to decide this case on the merits, and you're excluding substantive expert testimony when there's an express rule that allows that evidence to come in. Supposing the court had ruled that the evidence that you were presenting had been improperly denied in discovery, and it hadn't been produced, and entered a sanction against you under 37B2C, that would affect the outcome of the case, would it not? No, you're sanctioning it, and then you're talking about the... I'm talking about in a district court case, since we're doing it by analysis. Then you would have to look under the underlying basis for the sanction, and you'd go through a due process procedure that goes to... You can't just sanction somebody in a vacuum. It's whether or not the situation, the circumstances warranted that being the case. To answer your question, if there is a fact scenario where that is the only remedy, like for default judgment, for example, it's like you never get to the merits just because the other party didn't show up, do you bend over backwards to at least have that person show up and be at least able to give their side of the story? That's what due process is all about. My analogy is a little closer, though. In this particular case, twofold. One, because we had expert testimony. We submitted that. It didn't raise any new grounds. It was followed exactly why the Rule 42.123 was enacted. That's precisely the procedure we chose to follow. Three months after the whole procedure became available, and now you have different panels of the board applying different criteria as to when that information comes in. I'm going back to, actually, for the Palo Alto Networks and the Pacific Market International. Granted, you're trying to distinguish. I know the PTO and STAR has gone to great lengths to distinguish those cases based upon the type of evidence. But the problem is those cases, Your Honor, they apply criteria. But this is a discretionary regulation that allows them to decide what evidence or not. And if they do decide in one case to let stuff in, and they don't decide to let it in in another case, then they get to do that. And you may argue that it's an abuse of discretion, but you can't argue that it's legal, Eric. Yes, Your Honor, I can, because two reasons. One, if different criteria is being applied, then it's arbitrary and capricious. Well, okay, you can argue that it's arbitrary and capricious, but that's about as high of a standard of review as abuse of discretion. I think we would be very hard-pressed to find that the board's projection of this evidence here was arbitrary and capricious. Well, I would say, Your Honor, due to the court's recent ruling in June in Microsoft v. Proxicon, the standard was interpreting a rule was plain error and an inconsistent interpretation of the rule. Mr. Hayden-Bowles, would you like to say the rest of your time? You know what, Your Honor, the final thing I'm going to just mention here, Your Honor, is that also rental manufacturing taking all the heart and going to the merits, and I would say that for a rebuttal. Thank you, Your Honor. All right. Mr. Babcock, you'll take 15 minutes, and we'll give the Patent Office five. Yes, Your Honor, it's good morning, and may it please the Court. I think Judge Wallach's first question put the finger right on the nub of the issue here, which is this was Petitioner's strategic choice. This was a strategy call to try to, and it's a pejorative word, but you used it, Your Honor, stand bag the Patent Office. I think I used it in the hypothetical. In the hypothetical. Well, I'll use it without trying to be offensive, in a sense, where certainly counsel would like to present their evidence as late as possible to provide a disadvantage to the Patent Office. That's exactly what happened here, and it didn't work. Because the evidence didn't come in, yes, it was a one-sided decision for the Board. Correctly so. The Board wasn't going to replace its own analysis of the art, its own views of what the person of skill in the art would normally understand, what would have been obvious. The Board did what it should have done, which is it weighed the evidence that was of record, and the evidence was completely skewed. The only evidence of record was that the claims were not demonstrating to be unpatentable. Here the Board made a decision under Rule 123A, and I think Judge Hughes, you're correct, this is a discretionary call. And the question here for this panel isn't to try to draw a line about what's permissible and what's impermissible under 123A. The question here is did the Board abuse its discretion in denying the motion to have this particular piece of evidence excluded from the evidence? And this case is an extreme case. This is not even a close call where you say, well, there's issues going both ways. This is about a... Sure. If they had submitted a 10-page declaration and a 60-page supplement, it might be an argument. I think the specific case that we've discussed is a closer case. I'm not sure it was decided correctly. That's not an issue here. But at least there you had some supplementation going on. You had an initial declaration that was submitted. But here there was only one testimonial evidence submitted by the petitioner. I reversed the numbers from Pacific. Okay. Was it 10 and 60? It was 60 and 10. Right, right. And I'm saying if it had been 10 and 60. That may be a tougher case. But that's not here. That's not this case today. Here it was a 61-page declaration. Here it's zero. Pardon me? Here it's zero and 60. Exactly, Your Honor. And it's not even submitted two months late or three months late. It's submitted seven months into the proceeding, 28 days within the 30-day window. It's the only evidence they submit of any testimonial record. So in this situation, you've got an extreme set of facts. And the question is, did the Board abuse its discretion to say this is too extreme? And the answer is the Board certainly had its discretion to do that. Can I ask you about the merits? I mean, it is a substantial evidence question, and it seems to me that you probably have enough with expert testimony if we look at it as a substantial evidence question. But I'm a little troubled by the way the Board applied KSR and random manufacturing here because it seems to me that Gilliam teaches almost every single element of this claim except for the inert gas. Not so, Your Honor. And here's the key. And I'll put it simply. The prior art, every one of the prior art, and our expert made this very clear, understood that to create smoke, you needed fire. Where there's smoke, there's fire. You needed combustion. You needed air. I'm glad you said that. You needed air. No, I'm glad you said where there's smoke, there's fire. I was waiting for somebody to say that. And I think we actually said that to the Board, which is a simple way of saying the reason that this was an invention was something related to, you know, you can create smoke without combustion, without air. Both the Pauli and Stoyle, the prior references, they created smoke using oxygen, using atmospheric pressure. And, of course, here in the primary reference, Gilliam. I'm not sure that that's right. The evidence says it is. Okay, that's your expert testimony, but it seems like there's other prior art that suggests that you can create smoke through vaporization. All of the prior art that was applied. Let's assume that you can, that there's other prior art that says you can create smoke through vaporization. Well, you need to do more than that. You need to be able to, first, there's two limitations to the claim that we focused on. One is creating smoke in an inert environment, right? And then using that smoke and using it in an inert environment, you're putting it into a closed facility, which is inert, to prevent explosions. So none of the prior art even teaches us. You have a missing element to begin with. You don't have any situation where you have inert gas solely in an environment being tested. But this is the problem. That's where it seems to me you're requiring too much of the obvious analysis of going beyond KSR requiring a specific teaching that it be done in that specific way. Whereas if we assume that Gilliam, and I know you disagree with it, but for the purposes of this treat it as a hypothetical, assume that Gilliam has everything except an inert gas, do we have to have a specific teaching of an inert gas in an atmosphere like Gilliam, or do we just have to have a teaching that to reduce the problems of flammability, you use an inert gas? It's not enough. This is what the claim says. You have to look at the claim. The claim requires two different things. But the claim, okay, again, I don't think you're, maybe I'm not being clear, or you're just not addressing my hypothetical. Gilliam has all of those elements except an inert gas. So we don't need to go outside Gilliam. Again, treat this as a hypothetical. Because I understand you disagree about what Gilliam says, but assume Gilliam has everything except an inert gas. Do we have, when we go outside of Gilliam, don't we have teachings that show an inert gas can be used to reduce flammability? No, not in this record. Your Honor, and I mean this. I mean Colley says use an inert gas to reduce flammability. It does it in a different way, but we don't need the closed system because we have the closed system in Gilliam. You don't have either, you don't have the closed system where you're creating the smoke, and you don't have the closed system where you're actually applying the smoke. Okay, but again, I know you don't want to answer the hypothetical because you think it's too close to the fact, but I'm assuming Gilliam has every single one of those elements, including the closed system, everything in the claim, except the inert gas. Why wouldn't, based upon all the references and basically common sense, that you use an inert gas to reduce flammability? Because you don't think you're going to get smoke. The reason you don't combine it is because you say, look, if I take the oxygen out of the system and I use only inert gas, I can't create any smoke because it can't burn. I need air to burn to get smoke. And nobody said, oh, you know what, you can create smoke without air. How do you do that? Well, that was the trick, and that was the ah-ha. And I appreciate the hypothetical. So it's not the lack of prior art teaching inert gas to get flammability, or to reduce flammability. It's the lack of prior art teaching the use of an inert atmosphere to produce smoke. Okay, I understand. Those are two questions, right? That's the right answer. Because there's no dispute that the prior art said, oh, you can use inert gas for leak testing to actually determine a leak. So you could put in— There's no dispute that everybody understands that if you use an inert gas, that reduces flammability. Exactly. That was done in the prior art. And the problem with the old leak testing was that all you saw was the pressure would fall. So your view is what is not obvious, is that nobody had discovered how to produce smoke using an inert atmosphere. And Judge Lori pointed to the reexaminations, which really focused on—narrowed it down to say this is what's clever, is using inert gas to make visible smoke, which actually makes it a lot easier to not only know you have a leak, but to know where the leak is. Right. Because if you don't have smoke, you can't see it. Otherwise you're just falling—seeing a pressurization. All you're seeing is a pressure drop in a big system, a complicated system, like where is it coming from? You can listen, but where is it coming from? But the smoke, ah, I can look under the car and I can see it coming out. So that was what was clever here. And I don't want to suggest that the panel here should engage in a de novo review of the art and try to figure out for itself what a person of skill in the art would have thought. In fact, I said this to the board, and I did it with all due respect, and I'll say it to this panel as well, you're not a person of ordinary skill in the art. Neither am I. And it's not your job to put evidence of your own views into the record. We have plenty of evidence here from a person of ordinary skill, from that perspective, from our expert, and he explains in great detail all the prior art, how it works, how it's different, why there wouldn't be a reason to combine. The board said, it's unrebutted. Yes, there could have been other evidence in the record. And in fact, there's three or four pages in their brief which cite testimony that wasn't in the record. And I'm like, well, okay, I'm sure the panel here isn't going to get confused and start citing to evidence that wasn't in the record, but here it's just one site. So it's a very easy job for this panel to say, look, it's a discretionary call from the board. This is an extreme situation of facts. Of course the board can say this evidence doesn't come in. Now we have a situation where the evidence is all alongside this. There's only evidence supporting patentability. There's no evidence supporting they bear the burden. They still bear the burden. The board said they didn't carry your burden. You don't have any evidence. So you don't even have to get it, and you shouldn't try to get into the merits and say, well, let me see if I can figure out if it would have been obvious to me. That's never been the right test, and of course the panel here knows that it's not the right test. So I think that essentially makes it very simple for this panel. There's a couple issues in the reply brief I'd like to address since we didn't get a chance to discuss it, and I think maybe just one or two. The theme of the reply is kind of like, gee, we didn't know. Boy, had we known then what we knew today, we would have submitted it with our petition. We would have submitted the declaration with our petition. Well, that just isn't a credible argument, Your Honors. First of all, the statute itself, the enacting statute, Section 312A3B, says very plainly that evidence to be filed with a petition includes, quote, affidavits or declarations of supporting evidence or opinions if the petitioner relies on expert opinions. So all you have to do is look at the statute and say, okay, that's where it goes with the petition. Secondly, even though the actual first petition was filed on the first day of the implementation of the AIA, September 16, 2012, we'd been talking with the panel and with the board about these procedures for months, if not a year. The rules had been promulgated. There had been webinars and seminars, all kinds of stuff on the Internet about how do you do this new IPR stuff? How do you submit it? What's included? Everybody knew. Petitions go with the expert declarations. It goes in together. It's front-loaded. That wasn't a mystery. Everybody knew that. Thirdly, this wasn't the first petition. This wasn't the Gardner petition filed in September 16, 2012. This was over 100 petitions later. The board puts all the petitions online on their purpose system. If you aren't sure, how do you put a petition together? This is my first time. What do we include? There's 100 examples already sitting there for you to look at, and you can see that they all, not all, but most, include expert declarations. So for someone to say, I didn't know, don't fault me for not knowing, that's not a legitimate argument. At this point in time, January of 2013, we all knew you front-load it, you don't wait until seven months into the proceeding. There's a new case that was also cited in the reply, and that case was a recent case from the board, and it's Vallejo, North America. And I just want to note that it's a similar situation as the other case you decided, where supplement information included, it was a castillion of records, authenticating some documents. It was like archive.org kind of stuff, so you can say, okay, this is actually prior art. So it wasn't anything like what we're talking about here, so that case is purposely and terribly inapplicable. The issue with regards to the board's overall mandate to be efficient and cost-effective. There's a discussion in the reply brief about how it was efficient and cost-effective for Redline. Well, that isn't the proper standard. The test isn't whether it's efficient and cost-effective for a partisan. It's for the institution. And so the board is not looking at, well, did this save money for Redline? It said, was this allowing this new evidence in at this late stage, how would that affect the whole proceeding, including the board and both parties? So it's kind of, again, an argument that doesn't make a lot of sense when you look at it from the board's perspective. So with that, Your Honors, unless you have any other questions. I just want to differ with you on one point, Counselor. That is, I think we have considerable expertise in recognizing the leaking of inert gases. At least out of argument. Well, with that, Your Honor, I'll defer it out to the solicitor's office. Thank you, Mr. Babcock. And inert means having no reactivity and no effect, and what happens here is not without effect. Mr. Helm. Thank you, Your Honor. May it please the Court. The board has considerable discretion when controlling its docket. The board found in this case that Redline attempted to circumvent the rules governing inter-parties review by withholding information until after the review was granted. It wasn't just that the information could have been submitted earlier, but that waiting to submit it until later disrupted the entire inter-parties review process. The board also concluded that Redline's supplemental information amounted to an entirely new inter-parties petition submitted after the fact of the board's institution decision. In light of this behavior and the nature of the proposed submission, and consistent with all of the rules in 37 CFR 42, the board denied Redline's request to submit supplemental information. This is not an abuse of discretion. There was no abuse of discretion in denying Redline's request. If I may, quickly, if you have any questions of the Court, please, I'm happy to address them in specific. I just wanted to address a couple of issues that came up. The first is that what the board did in this case is kind of analogous to a scheduling order where you have a series of events that take place, and in the scheduling order you can have an expert discovery that closes before the end of fact discovery, and it would be perfectly reasonable for a trial court, and the board in this case, is acting in trial capacity to exclude the submission of expert testimony. That is what the board did in this case. Again, because they're acting in this type of trial capacity, an abuse of discretion is particularly well-founded. The review of an abuse of discretion is particularly well-founded in this case. We talked about the commentary on the rules a lot. Again, I think the panel understands that those set forth a minimum requirement to file, not the requirement for it to be granted. And 42.20 puts the burden of proof always onto the person asking for the relief, and consistent with, I think, a recent case, Microsoft Proxicon, the board did put that burden onto Redline in this case. The final thing is that with cases like this where there are minimum requirements, I think, again, this is consistent with Microsoft Proxicon, it makes sense to give the board discretion to flesh out the meaning of those rules. And so instead of opting for what Redline proposes, which is to let everything in as long as it's timely and relevant, it makes sense to give the board the discretion, and I think the board has applied the discretion very consistently in this situation, to let things in that are actually supplemental. For example, a supplement to an existing report, a supplemental information related to whether something was actually a prior art reference. And in that case, or in those cases that were cited, have been cited to this court, those trial cases from the board, I think the board has consistently applied the rule. So unless there are any questions. Thank you, Mr. Jones. Thank you very much, Your Honor. Mr. Newbold has a little less than two minutes for rebuttal. Yes, Your Honor, thank you. Going back to the merits, Your Honor, the statement was made that it was not known to make smoke using an inert gas and vaporized oil. The prior art overwhelmingly showed that, and we showed it through multiple references spanning 50 years. And per the court's precedent at Randall Manufacturing, where you take all of the art into consideration, the 1969 aircraft engineering article disclosed smoke generators that operated on the proven system of using oil propelled by inert gas to produce a non-flammable, the non-flammability of the smoke was appreciated for use in leak testing. There was no mention of the 1996 IFJ article that disclosed the use of a smoke machine that produces a non-flammable smoke using white oil entrained in a stream of inert propellant gas prior to the heating of the oil into smoke vapor. And the EST reference as well. This way of making smoke was extremely well known. It was well known to those skilled in the art. Even the most basic level, everyone in this room knows that there's a risk that gasoline can explode. Everyone would want to avoid that. And there were various methods known in the art that did that. And simple substitution, it's a very simple substitution of materials, Your Honor, and that would have been readily appreciated by anyone skilled in the art. With respect to the denial of our expert testimony, again, I want to emphasize the fact that 123A has a scheme. It has A, B, and C. B and C have other situations that have to be addressed with higher standards, higher showings. That is not applicable to 123A. That's what the rule says. The plain language is what we need to follow and that's what we should listen to. Thank you. Mr. Newpols will take the case under advisement.